NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| SHERYL W., | |
| Plaintiff, | Civil No. 19-19127 (RBK) |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff Sheryl W.'s Appeal (Doc. 1) from the final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. For the reasons set forth below, the Commissioner's decision is **VACATED**, and this case is **REMANDED** for further administrative proceedings consistent with this Opinion.

**I.      PROCEDURAL BACKGROUND[1]**

In 2015, Plaintiff filed a Title II application seeking Social Security benefits and a Title XVI application seeking Supplemental Security Income. (Compl ¶5.) Plaintiff alleged an onset of disability from February 5, 2010. (*Id.*) The claim was denied on November 3, 2015 and on Reconsideration on January 28, 2016. (*Id.*) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). On May 16, 2018, a hearing was held before ALJ Scott

---

[1] Because the record is voluminous, the Court sets forth only those facts necessary for context and relevant to the issues upon appeal. The Court cites to the administrative record as "R." Background facts and medical history are set forth in a separate section below.

1

Massengill. (R. at 33.) On August 21, 2018, ALJ Massengill issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 12.) The Appeal Council denied Plaintiff's request for Review, and Plaintiff now appeals this determination. (Compl. ¶5.)

## II.      LEGAL STANDARD

### A.  Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses an established five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing his disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that he was not engaged in "substantial gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must demonstrate that he has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. Third, either the claimant shows that his condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed impairment, the ALJ must assess the claimant's residual functional capacity ("RFC"), and the claimant must show that he cannot perform his past work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404. 1520(e). If the claimant meets his burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish

that other available work exists that the claimant can perform based on his RFC, age, education, and work experience. 20 C.F.R. § 404.1520 (a)(4)(v); *Zirnsak*, 777 F.3d at 612. If the claimant can make "an adjustment to other work," he is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

### B. Review of the Commissioner's Decision

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak*, 777 F.3d at 610 (citing 42 U.S.C. §405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See*, *e.g.*, *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F.Supp. 277, 284-85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 110, 114). A district court's review of a final determination is a "qualitative

exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III.   FACTUAL BACKGROUND

### A.  Plaintiff's History

Plaintiff contends that her disability dates to February 5, 2010, which is the date that she last engaged in "substantial gainful activity." (Compl. ¶6.) Plaintiff last worked at Liberty Bell Bank as a teller. (R. at 42.) Plaintiff claims that while working there, she had severe fatigue and pain in her hips and feet. (R. at 42.) Plaintiff found it difficult to work due to the pain, an inability to concentrate, and dizziness. (R. at 42.) She also was previously employed as a call center representative and as a cashier. (R. at 61–64.)

Plaintiff contends that she suffers from a variety of severe physical impairments, including fibromyalgia, knee osteoarthritis, degenerative disc disease, diabetes, and obesity, along with their associated functional limitations. (Compl. ¶6.) Plaintiff suffers body pain, which causes stiffness and difficulty with physical tasks such as lifting, walking, sitting, bending, standing, and reaching. (R. at 276.) Plaintiff occasionally uses a walker, a cane, and a brace. (R. at 278.) Plaintiff contends that she suffers from pain in her knees, hips, feet, and elbows caused by the fibromyalgia. (R. at 46.) Plaintiff testified that she could sit for an hour or two and stand for fifteen minutes due to feeling weak and breathless. (R. at 48–49.) She asserts that she can lift no more than ten pounds. (R. at 60.)

Along with the physical impairments, Plaintiff contends that she also suffers from several mental health disorders, including depression and anxiety. (R. at 276.) Plaintiff states that this causes her to have problems getting along with her family, friends, neighbors, and others. (R. at 276.) She also reports difficulty with memory, completing tasks, concentration, following

instructions, and getting along with others. (R. at 276–77.) Plaintiff takes Cymbalta for her depression. (R. at 52.)

### B. Relevant Medical History

A number of medical opinions and treatment records are in the administrative record. Only those relevant to the current appeal are discussed below.

#### i. Dr. Schweitzer

Throughout the relevant period, Plaintiff has sought care from her primary physician, Dr. Justin Schweitzer. In 2012, Plaintiff sought care from Dr. Schweitzer after experiencing a "tight feeling" in her lower back. (R. at 470.) In 2013, Plaintiff again sought care after feeling back tightness, shortness of breath, and fatigue. (R. at 466.) Dr. Schweitzer diagnosed Plaintiff with hypertension, osteoarthritis in her knees, allergic rhinitis, depression with anxiety, hyperlipidemia, and impaired fasting glucose. (R. at 466.) In 2014, Plaintiff again sought treatment from Dr. Schweitzer, who evaluated Plaintiff's symptoms. (R. at 450.) Dr. Schweitzer diagnosed Plaintiff with Diabetes Mellitus, a positive ANA, elevated liver functions tests, and bilateral knee pain. (R. at 450.) In 2016, Dr. Schweitzer diagnosed Plaintiff with a nasal septum deviation. (R. at 501.)

#### ii. Dr. Cornejo

In 2015, Plaintiff sought care from Dr. Juan Carlos Cornejo, who performed a consultative examination. Dr. Cornejo noted that Plaintiff stated that she had previously been diagnosed with fibromyalgia and diabetes. (R. at 403.) Plaintiff stated that she had difficulty with walking, standing, sitting, kneeling, crouching, climbing, and reaching. (R. at 403.) Dr. Cornejo noted that Plaintiff used a cane. (R. at 404.) Dr. Cornejo performed x-rays on Plaintiff's spine and found that Plaintiff had bilateral osteoarthritis, chronic bilateral elbow pain, a history of diabetes, hypertension, minimal cervical and thoracic degenerative disc disease, and lumbar degenerative

disc disease. (R. at 404.) Dr. Cornejo noted that "[b]ased primarily upon [Plaintiff's] subjective reports, she would have difficulty with prolonged walking and standing." (R. at 408.)

### iii. State Agency Medical Consultants

Plaintiff was also evaluated by the State agency psychological consultants who performed a mental assessment. These consultants noted that Plaintiff had difficulty maintaining social functioning, moderate difficulty concentrating, leading to mild restrictions in activities of daily living. (R. at 19.) The consultants also performed a physical assessment, which opined that Plaintiff had a capacity for a reduced range of light work. (R. at 92.)

### iv. Third-Party Function Report

Plaintiff's father, Ernest W., completed a third-party function report. In his report, Plaintiff's father noted that Plaintiff sleeps a lot and performs only light housework. (R. at 291.) The report noted that Plaintiff's impairments impact her ability to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs. (R. at 292.) Plaintiff's mental impairments affect her memory, her ability to complete tasks, her ability to concentrate, and her ability to follow instructions. (R. at 292.) The report noted that Plaintiff occasionally uses a cane. (R. at 293.)

**C. The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 5, 2010. (R. at 19.) At step two, the ALJ found Plaintiff to have the following severe impairments: fibromyalgia; knee osteoarthritis; degenerative disc disease; diabetes; and obesity. (R. at 19.) At step three, the ALJ found that none of Plaintiff's impairments met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21). The ALJ then constructed Plaintiff's RFC, finding the following:

6

> [T]he claimant has the residual function capacity to perform medium work . . . except she[] can occasionally climb ramps or stairs; can occasionally climb ladders, ropes, or scaffolds; and can occasionally balance, stoop, kneel, crouch, or crawl.

(R. at 21).

In formulating the RFC, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. at 21). However, the ALJ asserted that the record as a whole undermined Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms." (R. at 27). The ALJ asserted that the "overall record simply [did] not contain evidence consistent with the extensive degree of reducing functioning, including profound difficulties with standing and walking, alleged by the" Plaintiff. (R. at 22–23.)

In reaching the RFC, the ALJ referenced several medical opinions from the record. First, the ALJ referenced an internal medicine consultative examination from August 2015, performed by Juan Carlos Cornejo, DO. (R. at 24.) Dr. Cornejo noted that Plaintiff "lived in a two-story house and drove herself to the examination. [Plaintiff] stated she could not clean her house, but acknowledged being able to shop, do laundry, prepare simple meals, and perform self-care tasks." (R. at 24.) After the examination, Dr. Cornejo "assessed the claimant would have no limitations with most physical activities, other than difficulty with prolonged walking and standing[.]" (R. at 408.) The ALJ noted that these limitations were based primarily upon Plaintiff's subjective reports to Dr. Cornejo, not the objective findings of his examination. (R. at 24.) The ALJ also noted that "[Dr. Cornejo] only saw the claimant on one occasion three years ago and did not have an opportunity to review medical records." (R. at 23.) Accordingly, the ALJ only gave Dr. Cornejo's opinion partial weight to the "extent consistent with the . . . residual functional capacity for a reduced range of medium work." (R. at 23.)

7

Second, the ALJ also considered "[t]he State agency medical consultants' physical assessments, overall opining a capacity for a reduced range of light work, with additional postural limitations[.]" (R. at 23.) The ALJ found these "opinions [were] fairly consistent with the substantial evidence of record in recognizing the claimant is capable of performing work activity involving a significant degree of standing and walking," although the "evidence received at the hearing level also shows that the [Plaintiff] is somewhat less limited with respect to lifting and carrying[.]" (R. at 24.) Accordingly, the ALJ gave the "State agency medical consultants' opinions each only partial weight, to the extent consistent with the above residual functional capacity." (R. at 24.) The ALJ did not otherwise explain its reasoning regarding its analysis of the State agency medical consultants' opinions.

Third, the ALJ considered a third-party function report from the Plaintiff's father, which largely corroborated the Plaintiff's report. The ALJ gave this report only some weight, but noted that the report was not from "an acceptable medical source." (R. at 24.) The ALJ also noted that the report was only partially supported by the substantial evidence of record. (R. at 24.)

Finally, the ALJ referenced a report from Dr. Schweitzer, who "opined [Plaintiff] could only sit or stand for limited periods due to symptoms of fibromyalgia and knee arthritis[.]" (R. at 25.) Accordingly, Dr. Schweitzer determined that Plaintiff was unable to engage in gainful employment of any kind for at least three months. (R. at 25.) The ALJ found that Dr. Schweitzer's opinion was "vague, lacking a specific function-by-function assessment of the degree to which [Plaintiff] can perform certain activities, and conclusory, relating to an issue, disability[.]" (R. at 25.) The ALJ further found the conclusion was "inconsistent with the substantial evidence of record" and gave the opinion "little weight." (R. at 25.)

8

Given Plaintiff's RFC, at step four, the ALJ concluded that she was capable of performing past relevant work as a teller and cashier-checker. (R. at 25). The ALJ found that "[t]his work does not require the performance of work-related activities precluded by the [Plaintiff's] residual functional capacity[.]" (R. at 25.) As such, the ALJ found Plaintiff not disabled. (R. at 33).

## IV. DISCUSSION

On appeal, Plaintiff raises five challenges to the Commissioner's decision: (1) that the ALJ failed to address the Plaintiff's use of a cane, (Doc. 9, "Pl. Brief" at 17); (2) that the ALJ erred in his evaluation of Plaintiff's fibromyalgia and did not assign any limitations pursuant to Plaintiff's fibromyalgia, (*id*. at 14); (3) that the ALJ erred in his evaluation of Plaintiff's mental impairments and sleep apnea, (*id*. at 16); (4) that the ALJ erred in failing to address all of Plaintiff's functional limitations, (*id.* at 22); and (5) that the ALJ erred in his evaluation of the opinion evidence, (*id.* at 24). The Court begins with Plaintiff's fifth challenge.

### A. The Rejected Opinions

Plaintiff asserts that the ALJ erred in discounting the opinions of Dr. Schweitzer, Dr. Cornejo, the state medical consultants, and the third-party function report, and, as a result, failed to include appropriate limitations in the RFC determination. The Court finds that the ALJ gave sufficient reasoning for rejecting Dr. Cornejo's opinion and the third-party function report; however, the Court agrees that the ALJ failed to offer adequate reasoning for discounting the opinions of Dr. Schweitzer and the State agency medical consultants.

The Third Circuit has held that the ALJ must make the ultimate disability and RFC determination. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). When determining a claimant's ability to work, the ALJ must consider all relevant evidence, including the medical records, medical source opinions, and the individual's testimony. 20 C.F.R. §

9

404.1545(a). The ALJ is charged with a duty to evaluate all the medical opinions in the record under the factors set forth in the regulations and to resolve any conflicts. 20 C.F.R. § 416.927. The ALJ may choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

In order for a treating physician's opinion to receive "controlling weight" it must be: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). But even if a treating physician's opinion is not entitled to controlling weight, it is still due substantial respect:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time . . . . The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.

*Morales*, 225 F.3d at 317 (internal quotations and citations omitted).

### i. Dr. Cornejo

Plaintiff first argues that the ALJ erred by discounting the opinion of Dr. Cornejo. Dr. Cornejo found that, "[b]ased primarily upon [Plaintiff's] subjective reports, [Plaintiff] would have difficulty with prolonged walking and standing." (R. at 408.) The ALJ gave Dr. Cornejo's opinion partial weight because it was based on Plaintiff's subjective reports. (R. at 23.) Plaintiff argues that this rejection was improper. However, courts have generally held that "a physician's 'notation in his notes of a claimed symptom or subjective complaint from the patient is not medical evidence.'" *Moran v. Comm'r of Soc. Sec.*, 40 F. Supp. 3d 896, 916 (E.D. Mich. 2014) (citing *Schaaf v. Astrue*,

602 F.3d 869, 875 (7th Cir. 2010)); *see also Plummer v. Apfel*, 186 F.3d 422, 430 (3d Cir. 1999). Accordingly, an ALJ is not required to accept the statements as true or to accept as true a physician's opinion based only on those assertions. *See, e.g.*, *Plummer*, 186 F.3d at 430. Therefore, the Court cannot find that the ALJ erred by giving Dr. Cornejo's opinion only partial weight.

> ## ii.     Third-Party Function Report

Second, Plaintiff argues that it was error for the ALJ to give the third-party function report only some weight. (Pl. Brief at 20.) The third-party function report noted that Plaintiff had difficulties with walking and standing, Plaintiff occasionally used a cane, and Plaintiff had mental impairments. (R. at 292.) The ALJ gave the report only some weight because "the report is not from an acceptable medical source . . . and was only partially supported by the substantial evidence of record." (R. at 24.) The Court finds that the ALJ did not err in giving the third-party function report only some weight. The ALJ properly treated the report completed by Plaintiff's father as opinion evidence, and explained the weight he attributed to it. (R. at 24.) This consideration is consistent with Social Security Ruling 06-03p, which addresses consideration of opinions and evidence from sources who are not acceptable medical sources. *See Whitzel v. Colvin*, No. 15-456, 2015 WL 5965209, at *13 (M.D. Pa. Oct. 13, 2015) (citing SSR 06-03p, 2006 WL 2329939, at *6 (2006)). Accordingly, the Court finds the ALJ did not err by giving the third-party function report only partial weight.

> ## iii.     Dr. Schweitzer

Plaintiff next argues that the ALJ erred by substantially discounting the opinion of her treating physician, Dr. Schweitzer. Dr. Schweitzer found that the Plaintiff "could only sit or stand for limited periods due to symptoms of fibromyalgia and knee arthritis[.]" (R. at 24.) Although Dr. Schweitzer was Plaintiff's primary care physician, the ALJ gave little weight to Dr. Schweitzer's

opinion because it was (1) "vague, lacking a specific function-by-function assessment"; (2) "inconsistent with the substantial evidence of record" and (3) "conclusory, relating to an issue . . . reserved to the Commissioner." (R. at 24.)

With regard to the first and second points, the ALJ fails to sufficiently explain the reasoning, or point to any substantive contradictory evidence, to justify the rejection of Dr. Schweitzer's opinion. The main reason the ALJ gave for rejecting Dr. Schweitzer's opinion was that it did not contain a function-by-function analysis of Plaintiff's limitations. (R. at 24.) Plaintiff argues that there is no such requirement under Social Security law. (*Id.*) Rather, Dr. Schweitzer gave opinions regarding Plaintiff's ability to walk and stand, which are supported by the medical record. (*Id.*) The Commissioner fails to cite to any regulation or case law that requires a treating physician to include a function-by-function analysis of an individual's limitations in order for that physician's report to be given weight. Nor does the Commissioner address this point in its opposition brief. Moreover, this Court has previously remanded cases where the ALJ similarly rejected treating physician opinions due to a lack of a function-by-function analysis. *See, e.g.*, *Perry v. Comm'r, Soc. Sec. Admin.*, No. 19-16123, 2020 WL 4431800, at *5 (D.N.J. July 31, 2020).

With regard to the third point, the ALJ's assertion that Dr. Schweitzer's opinion should be discounted because it opined on an issue reserved to the ALJ is equally unpersuasive. Assuming *arguendo* that Dr. Schweitzer's statements do go to the ultimate issue of disability, the ALJ was correct that these statements could not bind him. Nevertheless, he erred by failing to recontact Dr. Schweitzer to seek additional clarification. *See Layton v. Comm'r of Soc. Sec.*, No. 19-9120, 2020 WL 1616424, at *6–7 (D.N.J. Apr. 2, 2020) (remanding case due to ALJ's failure to seek additional clarification from a treating physician who opined on an area reserved for the Commissioner);

*Murphy v. Comm'r of Soc. Sec.*, No. 19-6425, 2020 WL 1486041, at \*9 (D.N.J. Mar. 26, 2020) (same); *Neitz v. Colvin*, 2015 WL 1608725, at \*8 (M.D. Pa. Apr. 10, 2015) (noting that "when a treating source issues an opinion on an issue reserved to the Commissioner, the ALJ is generally obligated to recontact the treating physician"). The applicable regulation states:

> [O]ur rules provide that adjudicators must always carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner. For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.

SSR 96–5p.[2]

Subsequently enacted regulations have modified SSR 96–5p, such that "recontacting a medical source is now discretionary" rather than mandatory. *Bryson v. Comm'r of Soc. Sec.*, 639 F. App'x 784, 787 n.8 (3d Cir. 2016) (citing 20 C.F.R. § 404.1520b(c)–(d)). Consequently, an ALJ may forgo recontacting the treating source if there is some other valid reason for rejecting the opinion in question. *See Vargas v. Berryhill*, No. 16-2003, 2018 WL 1938312, at \*7 (M.D. Pa. Mar. 13, 2018) (finding recontact unnecessary where ALJ found other medical evidence contradicted physician's opinion), *report and recommendation adopted by* 2018 WL 1932879 (M.D. Pa. Apr. 24, 2018).

The ALJ did not make any effort to recontact Dr. Schweitzer, nor did he provide any valid reasons for rejecting Dr. Schweitzer's opinion. Additionally, a lack of a function-by-function analysis in Dr. Schweitzer's treatment notes simply underscores the need for the ALJ to seek clarification on the issue. Accordingly, the ALJ was not entitled to forgo recontact or to give Dr. Schweitzer's opinion such little weight. Because the ALJ's opinion lacked an adequate explanation

---

[2] SSR 96–5p has been rescinded, but remains in effect for claims, such as this one, filed before March 27, 2017. Rescission of Social Security Rulings 96–2p, 96–5p, and 6–3p, 82 Fed. Reg. 15,263 (Mar. 27, 2017).

for discounting Dr. Schweitzer's opinion, the Court is unable to conclude that the ALJ's RFC formulation was supported by substantial evidence. Therefore, remand is warranted.

> *iv.* *State Agency Medical Consultants*

Finally, Plaintiff asserts that the ALJ erred by giving only partial weight to the opinions of the State agency medical consultants. The State agency medical consultants found that Plaintiff had the capacity for a reduced range of light work, with additional postural limitations. (R. at 23.) The ALJ only gave these opinions partial weight because the agency consultants were non-examining sources with access to only a portion of the records. (R. at 23.)

Plaintiff argues that the ALJ only gives partial weight to these opinions without making it clear which portions receive partial weight, "thus making it impossible for a subsequent reviewer to determine how these opinions were considered in the development of the RFC." (Pl. Brief at 20.) The Court agrees. The regulations mandate that the ALJ provide "good reasons" for the weight he assigns the treating source's opinion in his written determination. 20 C.F.R. § 404.1527(c)(2). The ALJ should explain the weight given to ensure that the discussion of the evidence allows a "subsequent reviewer to follow the adjudicator's reasoning[.]" *Id.* Here, the ALJ failed to sufficiently identify which portions of the State agency medical consultants' opinions he was giving only partial weight. This was error, and therefore remand is warranted.

### B. Plaintiff's Other Challenges

Plaintiff also challenges the RFC constructed by the ALJ and the ALJ's evaluation of her mental impairments. But after reassessing Dr. Schweitzer's opinion and the State agency medical consultant's opinions on remand, the ALJ may construct a different RFC, or view Plaintiff's allegations of her mental impairments in a different light. As such, the Court will not address these challenges to the Commissioner's determination at this time.

## V.     CONCLUSION

For the foregoing reasons, the Commissioner's determination is **VACATED** and this case is **REMANDED** for further administrative proceedings consistent with this Opinion. An Order follows.


Dated:  12/10/2020                                                                    /s/ Robert B. Kugler
                                                                                                  ROBERT B. KUGLER
                                                                                                  United States District Judge

15